THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MELVIN L. SEALEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:14cv1036-MHT-WC |
| | ) | |
| TAMARA A. STIDHAM, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the court on Defendants' Motion To Dismiss, Or In The Alternative, Motion For More Definite Statement (Doc. 2), as well numerous filings by the Plaintiff, some of which appear related and responsive to the motion to dismiss, and some of which, to the extent they are comprehensible, appear to concern other matters Plaintiff believes relevant to this litigation.  The District Judge referred this case to the undersigned Magistrate Judge "for consideration and disposition or recommendation on all pretrial matters as may be appropriate."  Order (Doc. 6).  After a review of the parties' filings and supporting evidentiary materials, and for the reasons that follow, the undersigned RECOMMENDS that Defendant's Motion to Dismiss (Doc. 2) be GRANTED, that this case be DISMISSED, and that Plaintiff's pending motions be DENIED.

## I.     BACKGROUND

On September 2, 2014, Plaintiff, proceeding *pro se*, filed the instant complaint in the Circuit of Crenshaw County, Alabama.  Because the complaint purported to assert numerous violations of Plaintiff's constitutional and federal statutory rights, *see* Complaint (Doc. 1-2) at ¶ 1, Defendants removed the complaint to this court under 28 U.S.C. § 1441 on the basis of this court's federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1367.  Not. of Rem. (Doc. 1) at 2.  The specific factual allegations of Plaintiff's complaint are numerous, mostly conclusory, and, as a whole, difficult to decipher.  There is no doubt that Plaintiff's complaint concerns a foreclosure on property that he previously owned in Alabama, and that he believes the foreclosure was without proper authority.  The bulk of the allegations in the complaint appear to describe the various correspondences sent and received by Plaintiff in a prolonged dispute with Branch Banking and Trust ("BB&T"), the entity which the Federal Deposit Insurance Corporation assigned as successor of the rights of Colonial Bank after it was declared insolvent in 2009.  *See* Complaint (Doc. 1-1) at ¶¶ 11-31.  While it is perhaps unnecessary to summarize each of these allegations of correspondences sent or received in order to properly contextualize Plaintiff's claims and adjudicate Defendants' Motion to Dismiss, out of an abundance of caution the court will endeavour to set out what appears to be the substance of Plaintiff's dispute with Defendants and how the specific allegations of his complaint relate to any claims he purports to assert.

The complaint lacks any sort of helpful overview of Plaintiff's claims against Defendants before it dives, headlong, into a confusing and idiosyncratic description of Plaintiff's lengthy history of correspondences with individuals representing BB&T. Elsewhere, Plaintiff himself has more lucidly and intelligibly described the core of his dispute with Defendants as follows:

> The Petitioner resides at [sic] in the County of Crenshaw in the State of Alabama. Defendants are four (4) agents employed by a corporation upon information and belief are doing business in the County of Crenshaw, State of Alabama. Petitioner never received a document from Colonial Bank of a default regarding the loan in question dated April 4, 2004 from Colonial Bank Account #8040535398. On or about November 19, 2009 Petitioner received a loan package from BB&T over night via Fed Ex # 420568883479, the documentation contained a NOTICE REGARDING LOANS CLOSED IN THE NAME OF COLONIAL BANK ON OR AFTER AUGUST 17, 2009. In which BB&T agreed to assume certain liabilities of the failed institution. Paragraph five (5) states that Borrowers with existing loans would receive a separate notice from BB&T confirming a BB&T'S acquisition of the loan etc. At all times relevant to this assumption Petitioner never signed a contract with BB&T. Yet, BB&T did send a loan package via of FED EX # 420568883479, in an attempt to induce Petitioner into a forcible loan contract. This new contract was for a new loan with BB&T, being confused Petitioner did not sign the documents. The new contract had the same Loan # 8040535398 as Colonial Bank's Account Number. This is the same number [Defendant] Miller stated BB&T no longer uses for accounting purposes. And at the same time replacing and foreclosing on Petitioner's property with loan number 9641482436-1. In which any person of sound mind would not sign for an additional loan contract for the same property. At all times relevant Petitioner did not have a forcible contract with BB&T.

Compl. (Doc. 1) at 2-3, *Sealey v. Stidham, et al.*, Civ. No. 14cv1117-MHT-WC (filed Oct. 28, 2014).[1]

---

[1]   This excerpt is taken from the separate, subsequent complaint filed by Plaintiff—against the same defendants—after Defendants removed the instant complaint to this court. The subsequent federal

Provided this overview of Plaintiff's core dispute with BB&T, the numerous allegations of the instant complaint can be, even if not fully decipherable, at least placed in an appropriate frame of reference. Plaintiff alleges that he began corresponding with BB&T in November of 2009 "regarding loans closed in the name of Colonial Bank on or after August 17, 2009." Compl. (Doc. 1-2) ¶ 11. In December of 2009, he received "an improper response for verification of alleged debut," to which he responded by serving on unspecified persons a "Notice of Conditional Acceptance" under the purported authority of some unspecified provision of the Administrative Procedures Act. *Id.* at ¶ 12. He was then "offered a loan by BB&T," but he requested "full disclosure of the facts relating to the loan offer or alleged thereof." *Id.* at ¶ 13. In January of 2010, Plaintiff served on BB&T representatives his "AFFIDAVIT of a Notice of None Response" to his prior "Conditional Acceptance Offer." *Id.* at ¶ 15. Later, in February of 2010, Plaintiff served on Defendant Stidham a "Notice of Fault With the Opportunity to Cure," which Plaintiff alleges included an "Affidavit" in in "attempt to settle and close the matter in reference to the alleged note/mortgage No.:8040355398." *Id.* at ¶ 16. Plaintiff alleges that because "no response and/or verification of alleged debt was ever receive [sic] by the Plaintiff," Defendants (Stidham?) violated some unspecified dictate of "the Fair Debt and Collections Practices Act." *Id.* In March of 2010, Plaintiff again sent to Defendant Stidham a "Notice of Default With The Opportunity to Cure," for which he, again, did not receive a response. *Id.* at ¶ 17. In April of 2010, Plaintiff sent to "BB&T alleged

complaint, which concerns the same subject matter as the instant complaint but purports to state several additional causes of action against Defendants, will be addressed in a separate Recommendation.

Senior Vice President a Notice of Default with Opportunity to Settle," which, again, was unanswered. *Id.* at ¶ 18. Plaintiff alleges that this Notice in effect advised its recipient that a failure to respond to it constituted a tacit acceptance or agreement of the terms of the settlement disclosed therein. *Id.* In July of 2010, Plaintiff sent a "Notice of Settlement and Closure to BB&T, Senior Vice President and Chief Financial Officer," which advised the recipients that Plaintiff had run a "legal posting in the Luverne Journal" from June 3 through June 17, and that, because no response had been received after the legal notice, any entity asserting any interest in the property "should be barred from all rights, claims and liens if any of any kind forever in reference to Original Note No. :8040355398[.]" *Id.* at ¶ 19.

In September of 2010, Plaintiff corresponded with Defendant Wright regarding his position that BB&T "defaulted on verification of alleged debt since July 5, 2010, whereas Plaintiff had a Public notice posted since June 3, 2010, and no qualify [sic] representative for BB&T ever acknowledged any interest in the property and/or land[.]" *Id.* at ¶ 20. Jumping forward to August of 2011, the complaint next alleges that Plaintiff responded to Defendant Wright's letter "for demand of payment on a alleged debt" with his own "Notice of Debt Collector Disclosure Statement, pursuant to Fair Debt Collection Practices Act, 15 USC § 1692g, applicable portions of Truth in Lending (Regulation Z), 12 CFR 226[,]" and that he never received a response from Defendant "for verification of alleged Debt." *Id.* at ¶ 21. Plaintiff also wrote to Defendant Stidham in August of 2011 in response to Defendant Wright's letter demanding payment, explaining that all of his

previous correspondence "requested verification of all and any debt associated with Plaintiff property, would have solve [sic] any confusion and/or deception by all BB&T representatives who continue to violate Fair Debt Collection Practices Act."  *Id.* at ¶ 22. Jumping forward to June of 2013, the complaint next alleges that Plaintiff sent to Defendant Miller a "Conditional Acceptance" which instructed that, if the recipient did not "notify [Plaintiff] with proof of your claim of ownership as outlined in this notice within thirty days I will assume you have no proof of your claim thereby forfeiting your claims." *Id.* at ¶ 23.  Plaintiff also sent to Defendant Miller in June of 2013 his "Affidavit of Truth" in which he explained that he wanted BB&T to "verify the indebtedness by way of a completed Affidavit of Indebtedness along with producing the original alleged loan/note No.:964182436-1[.]"  *Id.* at ¶ 24.  Plaintiff also sent to Defendant Miller an "Affidavit of Truth" concerning the "unlawful sale" of a parcel of land which stated that he had never received a "lawful response from [his] correspondences" to Defendant Miller or BB&T so that he could "clarify and verify lawful ownership of the alleged Note pursuant to RESPA and Debt Collectors Act."  *Id.* at ¶ 25.

In July of 2013, Plaintiff sent to Defendant Miller another "Affidavit of Truth" noting the failure of any BB&T representative to respond to his "Conditional Acceptance notice," and stating that Defendant Miller and BB&T had caused he and his family substantial hardship over the previous four years.  *Id.* at ¶ 27.  The final correspondence detailed in the complaint is another "Affidavit of Truth" sent by Plaintiff to Defendant Miller in August of 2013, this time stating that Defendant Miller and BB&T were

6

"purposely avoiding" his questions and had not yet "lawfully responded to [his] questions contained in [his] request (RESPA) or [his] four (4) Affidavit of Truth thereby you have forfeited all alleged rights and claims as stated in the Affidavit." *Id.* at ¶ 29.

As reflected above, the instant complaint, and the dispute between the parties, can be distilled as follows: Plaintiff disputes the legitimacy of BB&T's claim as successor in interest to a mortgage he executed with Colonial Bank, and he sent numerous correspondences to the three named defendants unilaterally demanding that they verify, to his satisfaction, BB&T's lawful right to collect any debt Plaintiff may have owed to Colonial Bank or to BB&T as its successor.[2]  Because Defendants failed to respond to

---

[2]   Plaintiff's motive in seeking such information from BB&T appears to stem from his belief that Colonial Bank's insolvency, and that entity's purported receipt of "bailout" funds, somehow relieved him of the obligation to pay on his mortgage with Colonial or its successor, BB&T.   In his "MEMORANDUM IN SUPPORT OF A DEFAULT JUDGMENT," filed in the subsequent federal case he initiated against the same Defendants, Plaintiff argues as follows:

> Defendants the alleged "Bank" did receive "bail out" and/or "TARP" funds from the government and/or private quasi-government institutions, F.DI.C. that did in fact "pay-off" some or all of Defendant's "mortgages" and/or alleged assume "Debts" or other financial deals.

> It is incumbent on Defendants and the alleged "Bank" BB&T, to prove the mortgage in question WAS NOT paid-off and/or Petitioner was enumerated directly and/or indirectly for the mortgage in question by and through digital information created by the defendants

> In fact, absent prima facie evidence controverting Petitioner's claim that the alleged "Bank" BB&T and Defendants knowingly were reimbursed in some way by some entity for the mortgage in question, Defendants and the alleged "Bank" BB&T are agreeing that said mortgage *is* paid in full, (the Note) loan number 9641482436-1, closed to posting on June 26, 2013.

> Defendants MUST therefore present for inspection to the Petitioner a complete list with  accounting of ALL funds received correlated to ALL mortgages paid and not paid regarding the wrongful foreclosure attempt on the property and/or mortgage in question. . . .

Plaintiff's demands on the terms which he sought to impose upon them, Plaintiff now alleges that BB&T has forfeited any interest or claim it asserts, and furthermore that Defendants have violated numerous of Plaintiff's constitutional and/or federal statutory rights.

## II.    PLAINTIFF'S CLAIMS

From the above pool of allegations, Plaintiff purports to bring numerous claims for relief.  However, discerning those claims with considerable precision is difficult.  In the "Jurisdiction and Venue" portion of the Complaint, Plaintiff asserts that he brings claims pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, as well as pursuant to the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution.  Compl. (Doc. 1-2) at ¶ 1.  He likewise purports to "bring this action under the Real Estate Settlement Procedure Act, 12, U.S.C. § 1201, et seq., the Federal Truth in Lending Act 15 U.S.C. § 1601 et seq., Regulation Z, § 226.2(11) And Act 15 U.S.C. § 1692, Fair Debt Collection Practices Act.  Plaintiff also bring[s] this main action through civil RICO statute."  *Id.*

Notwithstanding all of the purported constitutional and statutory provisions providing him with viable claims based on the facts he alleges, Plaintiff only states two

---

Defendant's and the alleged "Bank" BB&T failure to produce for inspection said accounting documents is Defendant's and alleged "Bank" agreement that the mortgage in question is paid in full. There is no law dictating who is required to pay for a mortgage for it to be considered paid in full.

In fact, Petitioner believes the mortgage was and is paid in full and Plaintiff is attempting to fraudulently convert real property through a conspiracy involving numerous parties unknown to Petitioner.

Pl.'s Memorandum (Doc. 24) at 6-7, *Sealey v. Stidham, et al.*, Civ. Case No. 2:14-cv-1117-MHT-WC (filed Feb. 9, 2015).

discrete "Counts" or claims in his complaint: 1) "EMERGENCY TEMPORARY AND PERMANENT INJUNCTIVE RELIEF" (*see* Compl. [Doc. 1-2] at ¶¶ 32-39); and 2) "DECLARATORY RELIEF" (*see id.* at ¶¶ 40-47).[3]  Plaintiff's claim for injunctive relief appears to seek to enjoin an event—the foreclosure at the heart of this dispute—which occurred prior to the filing of the complaint.  *See* Compl. (Doc. 1-2) at ¶ 34 ("The specific facts set forth in the Complaint demonstrate that unless an emergency temporary injunction against the foreclosure that took place in July 19, 2014, is not granted that Plaintiff will suffer the irreparable injury, loss, and damages of the loss of his land and eviction therefrom.").  Plaintiff's claim for declaratory relief seeks to have the court "declare that Defendant BB&T has/had no legal or equitable rights in the Note or Mortgage for purposes of foreclosure and that said Defendant has/had no legal standing to institute or maintain foreclosure on the Property."  *Id.* at ¶ 41.  He maintains that "Defendant BB&T has provided no evidence that it has or had full legal interest in an title to the Mortgage, and has provided no evidence that it has or had any interest in the Note." *Id.* at ¶ 44.  Both of Plaintiff's "Counts" are entirely devoid of citations to any statutory or constitutional authority providing support for the relief he requests.

## III.   DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss Plaintiff's Complaint, arguing that Plaintiff has failed to sufficiently plead any cause of action against any of the individual defendants named in the Complaint, that Plaintiff has not properly supported his myriad mentions of federal

---

[3]   At the conclusion of Plaintiff's "Background Material Facts & Allegations" section of the Complaint, Plaintiff states that he "recognizes a cause of action for wrongful foreclosure[.]"  Compl. (Doc. 1-2) at ¶ 31.  He then sets out the elements for that tort in Georgia, with citations to numerous Georgia cases.  *Id.*

laws he asserts were violated with specific factual allegations demonstrating how such laws were violated, that the core premise underlying Plaintiff's assertion that BB&T and/or the named Defendants have violated his rights—that BB&T is subject to the Administrative Procedures Act—is simply erroneous and, therefore, any claims predicated on that faulty assumption are due to be summarily dismissed, that any claims asserted under the Federal Debt Collection Practices Act ("FDCPA") are either time-barred or due to be summarily dismissed because foreclosure on a mortgage does not constitute a debt collection activity under the Act, that Plaintiff's allegations do not sufficiently allege a claim of wrongful foreclosure even under Alabama law, and that Plaintiff's claims are barred by collateral estoppel and waiver because he did not challenge BB&T's lawful authority to foreclose on the subject property during prior bankruptcy proceedings.  Defs.' Br. (Doc. 3) at 8-17.

## IV.   DISCUSSION

As noted above, Defendants move to dismiss Plaintiff's complaint for, *inter alia*, failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Rule 8 of the Rules requires that a plaintiff file a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In general, then, a pleading is insufficient

if it offers only mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]"  *Twombly*, 550 U.S. at 555.  *See also Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (a complaint does not suffice under Rule 8(a) "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'").  In order to survive Defendants' motion to dismiss, then, Plaintiff's complaint "'must contain sufficient factual matter, accepted as true, to 'state a claim for relief which is plausible on its face.'"  *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).  "A claim is factually plausible where the facts alleged permit the court to reasonably infer that the defendant's alleged misconduct was unlawful.  Factual allegations that are 'merely consistent with' a defendant's liability,' however, are not facially plausible."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).

In addition to the foregoing, to the extent Plaintiff is alleging that Defendants have committed fraud, *see, e.g.*, Compl. (Doc. 1-2) at ¶ 2 ("This case arises out of Defendants' egregious and ongoing and far reaching an apparent fraudulent schemes for improper use of Plaintiff's identity, an appearance of fraud in the inducement, in the Execution, Usury and breaches of contractual and fiduciary obligations . . . ."), his allegations are subject to the pleading standards of Federal Rule of Civil Procedure 9(b).  *See United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1309-10 (11th Cir. 2002).

> That rule provides that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake" but that "[m]alice, intent, knowledge, and other condition of mind of a person shall be averred generally." FED. R. CIV. P. 9(b).  Rule 9(b) is satisfied if the plaintiff pleads "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2)

11

the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir.2001) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir.1997)).

*United States ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 793 (11th Cir. 2014) (unpublished decision).

Although district courts must apply a "less stringent standard" to the pleadings submitted by a *pro se* plaintiff, such "'leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action.'" *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quoting *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)). Accordingly, Plaintiff's complaint, even if liberally construed, must minimally satisfy the dictates of Rule 8(a) of the Federal Rules of Civil Procedure in order to survive Defendants' motion to dismiss. As set out below, the undersigned concludes that the complaint fails to withstand such scrutiny.

Although Plaintiff's complaint provides substantial detail regarding his numerous correspondences with the named Defendants, the complaint wholly fails to state a claim upon which relief could be granted as to any of those defendants because it contains nothing more than conclusory and unadorned allegations that the Defendants' conduct is actionable under the many different federal constitutional provisions or statutes to which Plaintiff alludes in the complaint. In other words, even liberally construed, Plaintiff's

allegations fail to permit any reasonable inference that any of the Defendants' alleged conduct was unlawful.

To begin with, Plaintiff's allegations do not support any claim that his rights under the First, Fourth, Fifth, Sixth, Eighth, or Fourteenth Amendments were violated by Defendants. Plaintiff fails to allege any actual violation of any rights protected by those constitutional provisions or how the named Defendants, all individual agents or employees of a private bank, are capable of inflicting such constitutional injuries. Accordingly, and contrary to Plaintiff's apparent belief, *see* Compl. (Doc. 1-2) ¶ 2, Plaintiff has not stated any viable claim pursuant to 42 U.S.C. § 1983. "Section 1983 provides a cause of action for deprivations of federal constitutional rights by state actors acting under color of law." *Wusiya v. City of Miami Beach*, __ F. App'x __, 2015 WL 3484326, *2 (11th Cir. June 3, 2015) (unpublished decision). Private parties generally are not "state actors" subject to § 1983. *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). Thus, neither BB&T, nor any of the named individual defendants, are state actors within the meaning of § 1983. *See, e.g., Douglas v. Doe*, 73 F. App'x 79 (5th Cir. 2003) (unpublished decision) (finding plaintiff failed to state a claim under § 1983 because "employees or officials of Bank of America" "are not state actors"). Furthermore, the complaint does not include any allegations indicating that the named individual defendants acted in concert with any state officials in order to render them subject to liability under § 1983. *See Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990).

13

Plaintiff also has failed to state any claim upon which relief could be granted for a violation of 42 U.S.C. § 1985.  The undersigned presumes that Plaintiff intends to allege a cause of action pursuant to 42 U.S.C. § 1985(3), which provides a right of action for a conspiracy to deprive a person of his rights or privileges protected by the Constitution.

> The elements of a cause of action under § 1985(3) are: (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Lucero v. Operation Rescue*, 954 F.2d 624, 627 (11th Cir.1992).   The second element "requires a showing of some 'racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'"  *Id.* at 628 (quoting *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 829 (1983)); *see also Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993) (holding that whatever the precise meaning of "class" may be, it "unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors.").

*Childree v. UAP/GA CHEM, Inc.*, 92 F.3d 1140, 1146-47 (11th Cir. 1996).  Apart from the fact that the complaint includes no plausible allegations of a conspiracy among the Defendants or others for the purposes of violating Plaintiff's rights, the complaint does not allege, or even reasonably permit the inference, that any actions were taken against Plaintiff due to his race or due to some invidious discriminatory animus related to any class to which he might purport to belong.  Finally, because Plaintiff has failed to state a viable claim for relief under § 1985(3), he has perforce failed to state a claim for which relief could be granted under § 1986, which provides a right of action against persons who, knowing that a conspiracy within the ambit of § 1985(3) is afoot, "and having the

14

power to prevent or aid in prevent the commission of the same, neglects or refuses to do so[.]"

Moving past Plaintiff's allegations that Defendants are somehow responsible for any perceived violation of his federal constitutional rights, the undersigned turns to Plaintiff's allegations that Defendants have violated rights protected by various federal statutes.  As recounted above, early in his complaint, Plaintiff purports to "bring this action under the Real Estate Settlement Procedure Act, 12, U.S.C. § 1201, et seq., the Federal Truth in Lending Act 15 U.S.C. § 1601 et seq., Regulation Z, § 226.2(11) And Act 15 U.S.C. § 1692, Fair Debt Collection Practices Act.  Plaintiff also bring this main action through civil RICO statute."  Compl. (Doc. 1-2) at ¶1.  Of course, pursuant to *Twombly* and *Iqbal*, Rule 8(a) requires more than a series of generalized allegations that Defendants' conduct has violated unspecified provisions of a laundry list of federal laws. Rather, in order to adequately place Defendants on notice of their alleged unlawful conduct, the complaint must state, at a minimum, the discrete provisions of federal law which the alleged conduct has violated with sufficient supporting factual allegations to make clear how Defendants' conduct allegedly violated the law.  *See Henry v. Guaranteed Rates, Inc.*, 415 F. App'x 985, 986 (11th Cir. 2011) (unpublished decision) (finding that, even read "liberally," *pro se* complaint failed to state a claim for relief where it alleged "defendants violated 'banking laws, 'regulation Z,' and 'truth in lending laws,' . . . but [Plaintiff] fail[ed] to explain what provision of those laws the defendants violated or how the alleged misconduct entitles her to obtain injunctive relief or recover

monetary damages").  As such, Plaintiff's broad assertion that Defendants are liable under the numerous cited provisions of federal law does not suffice for purposes of Rule 8(a).

Turning to the few specific instances where Plaintiff actually merges some allegation of unlawful conduct by a Defendant with at least a mention of some supposedly relevant and binding federal law implicated by such misconduct, Plaintiff's complaint fares no better.  In ¶ 21 of the complaint, for example, Plaintiff alleges that in August of 2011 he responded to Defendant Wright's prior letter "for demand of payment on a alleged debt with a Notice of Debt Collector Disclosure Statement, pursuant to Fair Debt Collection Practices Act, 15 USC § 1692g, applicable portions of Truth in Lending (Regulation Z) 12 CFR 226."  Presumably, Plaintiff is alleging that Defendant Wright is liable for a violation of some provision of one or more of these laws because he did not respond to Plaintiff's "Notice of Debt Collector Disclosure Statement."   However, Plaintiff does not cite to or describe any provision within any of the cited laws which required such a response from Defendant Wright.  Elsewhere, in the complaint, Plaintiff presents the wholly unadorned allegation that the failure of Defendants to respond to his requests for "verification of alleged debt" is in "direct violation of the Fair Debt and Collections Practices Act" (Compl. [Doc. 1-2] at ¶ 16, 22, &24), and that Defendants and BB&T violated "RESPA" by not answering his questions (Compl. [Doc. 1-2] at ¶ 29). Again, though, because Plaintiff does not cite to or describe any specific provision or requirement within such federal laws which would render Defendants' alleged conduct

unlawful, he has simply failed to state a claim upon which relief could be granted for any asserted violation of such laws.  *Henry*, 415 F. App'x at 986.

Apart from Plaintiff's failure to state a plausible claim pursuant to the Constitution or the numerous federal laws to which the complaint alludes, Plaintiff's complaint raises a few other issues worthy of discussion.  As described above, the bulk of Plaintiff's allegations, and what appears to be the core of his dispute with Defendants, stem from his belief that he may compel Defendants to respond to his demands for certain information in response to their communications with him, and that Defendants' collective failures to respond to his demands consistent with the terms he unilaterally sought to impose on them somehow both effects a waiver of BB&T's rights as well as constitutes violations of Plaintiff's federally protected rights.  As Defendants have noted, *see* Defs.' Br. (Doc. 3) at 9, Plaintiff appears to believe that BB&T and Defendants are bound to respond to his communications, on his terms, by force of the Administrative Procedures Act.  *See* Compl. (Doc. 1-2) ¶ 12.  However, Plaintiff does not cite in the complaint any specific portion of the Administrative Procedures Act other than a citation to "5 U.S.C. § 552 and 552a seq[,]" *id.*, and he certainly does not cite any provision of law which indicates that these code provisions, or any other part of the Administrative Procedures Act, is applicable to a private bank like BB&T or the individual Defendants he has sued. Indeed, the Administrative Procedures Act applies to federal agencies, which as set forth in the Act itself, do not encompass private banks, much less their agents and employees. *See* 5 U.S.C. § 551(1).  Therefore, to the extent any of Plaintiff's claims are premised on

17

some supposed violation of the Administrative Procedures Act by BB&T or the named Defendants, Plaintiff has failed to state a claim upon which relief could be granted.

Plaintiff's complaint also alludes, in passing, to a cause of action for "wrongful foreclosure."  Compl. (Doc. 1-2) at ¶ 31.  Specifically, at the conclusion of his "Background Material Facts & Allegations" section of the complaint, Plaintiff alleges that he "recognizes a cause of action for wrongful foreclosure" and then sets out the elements of such a tort as described in Georgia case law.  Plaintiff does not appear to separately allege a cause of action for wrongful foreclosure considering that the only two specific causes of action alleged in the complaint are "EMERGENCY TEMPORARY AND PERMANENT INJUNCTIVE RELIEF" and "DECLARATORY RELIEF." Compl. (Doc. 1-2) at ¶¶ 32-46.  Nevertheless, even construing the complaint liberally, Plaintiff still has failed to state a claim upon which relief could be granted for any wrongful foreclosure.  To begin with, Plaintiff has not shown that any of the individually named Defendants, the only Defendants he has sued, are responsible for any alleged foreclosure.  Plaintiff did not name BB&T—the bank which actually instituted foreclosure proceedings—as a Defendant in his complaint and has not served the complaint on BB&T.  Furthermore, Plaintiff has not alleged any plausible fact showing that any foreclosure was indeed wrongful.  Again, Plaintiff's entire claim that BB&T did not have any interest in the mortgage he executed with Colonial Bank appears predicated on his erroneous belief that Defendants were required to provide him with "affidavits" addressing issues he raised in his correspondences.  Plaintiff may not sufficiently allege a

18

claim of wrongful foreclosure merely by attaching that label to the face of a complaint which is devoid of otherwise plausible allegations supporting the claim.

In addition, as Defendants argue, Plaintiff's allegations do not suffice under the elements of the tort of wrongful foreclosure as it exists in this State.  In Alabama, the tort of wrongful foreclosure arises "'where a mortgagee uses the power of sale given under a mortgage *for a purpose other than to secure the debt owed by the mortgagor*.'"  *Harris v. Deutsche Bank Nat. Trust Co.*, 141 So. 3d 482, 491 (Ala. 2013) (quoting *Jackson v. Wells Fargo Bank, N.A.,* 90 So. 3d 168, 171 (Ala. 2012) (emphasis in original).  Because Plaintiff "did not allege that the power of sale was exercised [by BB&T] for any purpose other than to secure the debt owed by [Plaintiff]"—indeed the allegations of the complaint appear to make clear that the precise reason for the foreclosure by BB&T was to secure the debt owed by Plaintiff, but that he simply disagrees that BB&T had any lawful authority to do so—he failed to state a claim for wrongful foreclosure under Alabama law.  *Id.* (internal quotations omitted).

Finally, to the extent Plaintiff's complaint should be construed as presenting some sort of generalized fraud claim against any of the named Defendants, even though such a claim is not clearly and directly stated as required by Rule 8(a), Plaintiff has failed to state a claim upon which relief could be granted and, moreover, has failed to satisfy the pleading standard applicable to such claims.  The most that can be said of Plaintiff's allegations of fraud against Defendants is that he believes they perpetrated some fraudulent scheme by failing to acquiesce to his unilateral and legally unsupported

demands for "affidavits" including information he deemed essential to those Defendants' ability to prosecute BB&T's claimed rights as Colonial Bank's successor.  Plaintiff fails to explain how these actions may constitute actionable fraud under any theory and, apart from these plainly inadequate allegations, he has failed to state "with particularity" any other "circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

For all of the foregoing reasons, the undersigned finds that Plaintiff has failed to state a claim upon which relief could be granted as to any express or implied claim in the complaint.  In addition to the complaint, however, Plaintiff has subsequently filed numerous other documents deserving of some discussion.  For the most part, these documents do not materially clarify or advance any of the claims set out in the complaint.  Rather, they mostly appear to reiterate the allegations of the complaint, lodge challenges to prior state court proceedings, or complain about and seek relief from this court's Order (Doc. 19) holding in abeyance Plaintiff's premature efforts to obtain discovery from Defendants.  Because Plaintiff is *pro se*, and for the sake of thoroughness, the court will briefly address each of these documents.

The first such filing is styled "NOTICE OF OBJECTIONS OF THE REMOVAL OF PLAINTIFF'S COMPLAINT" (Doc. 8).  This document purports to examine Alabama's definition of "Parties in Interest" before moving on to discuss concepts related to jurisdiction.  The subject matter of this document, though somewhat difficult to discern with any confident precision, appears to be Plaintiff's contention that his complaint should not have been removed to this court from the Circuit Court of Crenshaw County,

20

Alabama, where he originally filed the complaint.  *See* Pl.'s Not. (Doc. 8) at 5.  Indeed, Plaintiff specifically requests in his "Conclusion" that the court "Remand this case accordingly back to its origination of the Defendant action . . . ."  *Id.*  However, as the undersigned explained in an Order (Doc. 19) entered on March 5, 2015, "Defendants removed this action on the basis of this court's federal question subject matter jurisdiction.  Plaintiff has presented no argument that the court lacks such jurisdiction in this case."  Plaintiff filed a complaint in state court purporting to allege claims against Defendants under numerous provisions of the Constitution, as well as pursuant to several federal statutes.  As such, Defendants were entitled to remove the action to this court pursuant to 28 U.S.C. § 1441.  As the court noted previously, there simply is no basis for remanding the complaint back to state court.

The next filing is styled "Plaintiff's/Petitioners, Evidence and Request for Verification of alleged DEBTS, In Brief" (Doc. 9).  This document appears to present a more detailed description of the numerous correspondences already alleged in the complaint, often including what is purported to be lengthy excerpts from some of the parties' actual correspondences.  *See* Doc. 9 at 3-17.  Plaintiff concludes this document with a request that the court "remand this case no CV-2104-00016, back to, the Circuit Court of Crenshaw County, Alabama, for all the reason state herein of the wrongful foreclosures issues without the proper parties having lawful standing."  *Id.* at 17.  Nothing in Plaintiff's more detailed description of the actual text of his correspondences suffices as a sufficient statement of a claim for purposes of Rules 8(a) and 12(b)(6).  And,

as detailed above, Plaintiff is not entitled to remand of this action to the state court. Accordingly, Plaintiff's "Evidence and Request for Verification of alleged DEBTS, In Brief" is of no moment in this action.

Plaintiff's next filing is styled as an "AFFIDAVIT" "IN OBJECTION TO THE WRONGFUL FORECLOSURE ACTION COMENCED BY THE DEFENDANT(S) FOR ALLEGED BANK(S) BRANCH BANKIN [sic] AND TRUST BB&T" (Doc. 11). This document again describes the numerous correspondences between Plaintiff and Defendants which are alleged in the complaint. *See* Pl.'s Aff. (Doc. 11) at ¶¶ 3-31. Apart from these essentially redundant descriptions of Plaintiff's correspondences, the "Affidavit" consists of numerous opinions, arguments, and unsupported legal conclusions which can in no way be construed as proper attestations of fact and, more to the point, do not advance any of Plaintiff's claims or redeem them from the numerous deficiencies afflicting the complaint, as described previously in this Recommendation.

The next filing is styled "PETITIONERS BRIEF AND MEMORANDUM IN SUPPORT OF MOTION TO VACATE A VOID JUDGEMENT AND DISMISS PLAINTIFF ORIGINAL COMPLAINT CASE NO. 24-CV-2013-900064" (Doc. 14). This document appears to attack BB&T's prosecution of a foreclosure or ejectment action in the state courts. The document reiterates Plaintiff's contention that BB&T did not properly demonstrate to Plaintiff its right to collect on the mortgage Plaintiff executed with Colonial Bank and furthermore recounts many of the correspondences already described in this Recommendation and in Plaintiff's other filings. The document then

segues into analysis of numerous provisions of the Alabama Rules of Professional Conduct, before concluding that the "record will clearly indicate and show good cause why BB&T the alleged "BANK" did not and could not had standing to have filed a foreclosure complaint against Mr. Sealey."  Pl.'s Br. (Doc. 14) at 11.  Plaintiff then requests that the court remand the action back to the state court or, alternatively, "dismiss with prejudice the VOID JUDGMENT of BB&T allegation of alleged rights to foreclose on Mr. Sealey's property and ejectment thereafter[.]"  *Id.* at 12.[4]  For the reasons stated in this Recommendation, and in this court's prior Order (Doc. 19) at 2-4, Plaintiff has provided no cause to remand this action to the state court and this court lacks the authority to vacate or void a final civil judgment entered in a state court in a matter separate from the action removed here by Defendants.

The next filing is styled "PETITIONER'S RESPONSE TO ORDER TO SHOW CAUSE REQUESTED BY HONORABLE JUDGE Wallace Capel, Jr." (Doc. 15).

---

[4] In several places in this filing, Plaintiff appears to argue that the instant case is consistent with *Sturdivant v. BAC Home Loans Servicing, LP*, 159 So. 3d 15 (Ala. Civ. App. 2011), although he never clearly articulates how any holding or principle from that case bears on the instant case. *See* Pl.'s Br. (Doc. 14) at 6, 11-12.  Rather, it appears that Plaintiff at some point discovered *Sturdivant*, discerned that it has something to do with foreclosures, and further perceived that it resulted in a favorable outcome for the party challenging a foreclosure in that case.  And, indeed, in that case the Alabama Court of Civil Appeals reversed a lower court's determination that a loan servicing company was entitled to summary judgment in an ejectment action against the mortgagor because, the appellate court determined, the loan servicer never acquired title to the property and therefore lacked standing to bring an ejectment action.  *Sturdivant*, 159 So. 3d at 26-27.  Even if some principle advanced by *Sturdivant* had some bearing on this case, *Sturdivant* has been reversed by the Alabama Supreme Court.  *See Ex parte BAC Home Loans Servicing, LP*, 159 So. 3d 31, 45-46 (Ala. 2013).  As such, the undersigned finds nothing in this document, or in *Sturdivant*, which advances any claim alleged in the complaint, including the wrongful foreclosure claim briefly alluded to by Plaintiff.

Although the document purports to be a response to the undersigned's Order (Doc. 7) directing Plaintiff to show cause why Defendants' motion to dismiss should not be granted, the document appears to be an argument against the legality of "non-judicial foreclosure" which Plaintiff has lifted from the internet[5] and supplemented with additional argument.   Apart from first presenting what appears to be a reversal of Plaintiff's desire to have the action remanded to state court (*see* Pl.'s Br. [Doc. 15] at 18 ["Petitioner herein agrees in part to the removal under the circumstances of the Mortgage Back Security registered with the SEC is warranted.  This Court is the proper forum to adjudicate this matter."), only to apparently change his mind a few paragraphs later (*see id.* at 19 ["For all the above-and-foregoing reasons, the removal of this case was improper . .  ."]), the document presents nothing cogent or relevant to anything in the complaint deserving of further discussion.

The next document is styled "PETITIONER'S BRIEF AND SUPPORT FOR INJUNCTIVE RELIEF AND RULING ON MOTIONS" (Doc. 20).   This document again recounts some of Plaintiff's correspondences with Defendants, as described in the complaint. Pl.'s Br. (Doc. 20) at 2-4.  The document then describes the circumstances of Plaintiff's filing his complaint in state court and Defendants' removal to this court.  *Id.* at 4-5.  Plaintiff concludes by asking that his action be remanded back to state court or that

---

[5]     Among other places on the internet, the document filed by Plaintiff, with some supplementation,      is      available      for      download      in      word      format      at *api.ning.com/files/.../SECONDCOPYOFNONJUDICIALFORECLOSURE.doc.*

the court "find in favor of the Petitioner, for a Quiet Title of the property . . . ." *Id.* at 8. Nothing in the document advances any claim alleged in the complaint.

The next document is styled "PETITIONER'S REQUEST AND MOTION FOR LEAVE TO AMEND COMPLAINT WITH ALTERNATIVE AND MORE DEFINITE STATEMENTS" (Doc. 21).   In this document, Plaintiff requests leave to amend his complaint pursuant to Rule 15(b)(2).  Pl.'s Mot. (Doc. 21) at 1.  The motion does not include any proposed amended complaint, does not provide an explanation for Plaintiff's assertion that justice requires granting him leave to amend the complaint, and, indeed, does not provide any indication whatsoever about what would be the content of any amended complaint so that the court might determine whether leave should be permitted. As such, Plaintiff failed to provide any basis for permitting leave to amend the complaint and the motion is due to be denied.

The next document is styled "PETITION TO CONTINUE PROCEEDINGS AND COMPEL DEFENDANTS' TO PROVIDE FULL DISCLSOURE OF VERIFIED FACTS AND RESPOND TO PETITIONERS' CONFERENCE REQUESTING INFORMATION" (Doc. 22).  This document appears to be in response to the Court's Order (Doc. 19) of March 5, 2015, in which the undersigned denied several of Plaintiff's then-pending motions and granted Defendants' request to hold Plaintiff's premature discovery requests in abeyance pending the court's disposition of their motion to dismiss. The document describes different types of fraud and disputes Defendants' and the court's position that Plaintiff's efforts to obtain discovery were premature.  Pl.'s Pet. (Doc. 22) at

2-5.  The document concludes with Plaintiff's request that the court "find good cause to allow the proceeding to continue and the Court compels the Defendants to comply with the discovery request . . . ."  *Id.* at 5.  For the reasons stated in the court's prior Order (Doc. 19), Plaintiff's discovery requests were premature and Defendants' are not required to respond to such requests unless and until their motion to dismiss is denied and they submit an answer to the complaint.  Accordingly, any motion to "continue" proceedings or compel Defendants to respond to Plaintiff's discovery requests contained or implied within Plaintiff's "Petition" is due to be denied.

The next document is styled "PETITIONER'S MEMORANDUM AND BRIEF OF A STANDARD REVIEW OF RULES 12(b) (6) IN SUPPORT OF A ORDER TO REMOVE THE ABEYANCE ORDER" (Doc. 23).  In this document, Plaintiff discusses provisions of the Alabama Rules of Evidence and numerous provisions of the Alabama Rules of Professional Conduct, *see* Pl.'s Memo. (Doc. 23) at 3-6, before reiterating many of the factual allegations and legal conclusions set out in the complaint and discussed previously in this Recommendation.  Plaintiff also requests that the court grant his motion to amend and award any other relief deemed appropriate.  *Id.* at 12.

In conjunction with this document, Plaintiff filed a document styled "PETITIONER'S BRIEF OF A STANDARD REVIEW OF RULES 12 (b) (6) IN SUPPORT OF A ORDER TO REMOVE ABEYANCE" (Doc. 24).  In this document, Plaintiff appears to argue that his complaint satisfies the pleading standard of Rule 8(a)(2) and that, therefore, his complaint should not be dismissed pursuant to Rule

12(b)(6).  Pl.'s Br. (Doc. 24) at 2-4.  Plaintiff concludes by requesting that the court "grant Petitioners request to amend his Complaint and Counterclaims to satisfy Defendants' request for an alternative and a more definite statement . . . and to reinstate and remove the order of Abeyance in this case."  *Id.* at 6.  However, once again, Plaintiff failed to provide any basis for or an explanation of his contention that leave to amend should be granted and he did not provide any hint about what would be the content of any amended complaint so that the court may apply Rule 15(a)(2) in the absence of argument by Plaintiff.

In conjunction with the two documents described above, Plaintiff also submitted a document styled "PETITIONER'S AFFIDAVIT OF DECLARATIONS OF DEFENDANT STATEMENTS IN SUPPORT OF AN ORDER TO REMOVE THE ABEYANCE ORDER" (Doc. 25).  This document again recounts some of the series of correspondences between Plaintiff and Defendants, and once again presents numerous arguments or legal conclusions as attestations of fact.  Pl.'s Aff. (Doc. 25) at ¶¶ 8-37.[6] Nothing in the Affidavit advances any of the claims or arguments in Plaintiff's complaint.

---

[6]   In addition, this document appears to allege that Defendants have perpetrated "unfair and deceptive consumer practices" in violation of, "or in correlation with," the False Claims Act.  *See* Pl.'s Aff. (Doc. 25) at ¶ 35.  Of course no such claim is presented in Plaintiff's complaint and, although Plaintiff cites to numerous provisions of the United States Code in support of this allegation, he does not explain specifically how Defendants' actions violated such code provisions or whether and how he is entitled to any relief for such violations.  Plaintiff's failure to provide any such explanation is understandable; he cannot state any False Claims Act cause of action against BB&T or the named Defendants for their efforts to collect on the mortgage Plaintiff executed with Colonial Bank.  *See Urquilla-Diaz*, 780 F.3d at 1045 ("The False Claims Act enables private citizens to recover damages *on behalf of the United States* by filing a qui tam action against a person who (1) knowingly presents, or causes to be presented, *to an officer or employee of the United States Government* . . . a false or fraudulent claim for payment or

The next filing is styled "PETITIONER'S MOTION OF EVIDENTIARY AND METHODS OF FRAUD PROCURER BY THE DEFENDANT IN VIOLATION OF DUE PROCESS" (Doc. 26). In this filing, Plaintiff quotes from Rules 46 and 52 of the Federal Rules of Civil Procedure, but does not explain the relevance of these Rules to any issue before the court, and then provides an excerpt from "15 U.S.C. § 1692e." Pl.'s Mot. (Doc. 26) at 1-3. The document then again describes some of the communications between Plaintiff and Defendants. *Id.* at 4-6. Plaintiff concludes by requesting that the court find in his favor or remand the matter back to the state court. *Id.* at 7. In conjunction with this filing, Plaintiff also filed his "AFFIDAVIT IN SUPPORT OF MOTION OF EVIDENTIARY AND METHODS OF FRAUD PROCURER BY THE DEFENDANTS IN VIOLATION OF DUE PROCESS" (Doc. 27). This document appears to present a number of allegations about Defendants' collective efforts to deprive Plaintiff of due process and recounts, again, several of the correspondences between Plaintiff and Defendants. Furthermore, Plaintiff accuses Defendants of committing fraud upon this court by failing to disclose information about prior state court proceedings. Pl.'s Aff. (Doc. 27) at ¶11-20. Plaintiff fails to explain how Defendants' motion to dismiss or their motion to hold discovery in abeyance—the only things Defendants have filed in this action—could somehow constitute a fraud upon this court, or why any of the

---

approval; [or] (2) knowingly makes, uses, or causes to made or used, a false record or statement to get a false or fraudulent claim *paid or approved by the Government*.") (emphasis added). As with Plaintiff's misconceptions about the Administrative Procedures Act, or federal statutes which enable a citizen to seek redress for constitutional violations, or the numerous other federal statutes he mentions in his complaint, it appears that Plaintiff simply does not understand the law which he accuses Defendants of having violated.

information he describes as having been omitted or concealed by Defendants is relevant to any issue raised by Defendants' motion to dismiss.

The next document submitted by Plaintiff is his "MOTION OF THE ERROR BY THE COURT TO HOLD THE PENDING CASE IN ABEYANCE" (Doc. 28).   In this document, Plaintiff appears to take issue with the court's Order (Doc. 19) holding his premature discovery efforts in abeyance.  Pl.'s Mot. (Doc. 28) at 2-4.  In conjunction with this document, Plaintiff submitted his "AFFIDAVIT IN SUPPORT OF MOTION OF COURT ERROR TO HOLD THE PENDING CASE IN ABEYANCE" (Doc. 29).   On review, this "affidavit" simply restates many of Plaintiff's claims that Defendants failed to comply with his "private remedy" pursuant to the Administrative Procedures Act, have committed fraud upon this court, and that BB&T never possessed the lawful right to foreclose on his property.

As reflected in the above review of Plaintiff's filings, Plaintiff has inundated this court with numerous documents which, for the most part, are confusing, repetitive, and are not plainly responsive to the discrete grounds for dismissal asserted in the Defendants' motion to dismiss.   Cutting through all of the hundreds of pages of unsupported arguments and "affidavits," the core deficiency of Plaintiff's complaint, and his dispute with Defendants in general, remains clear: Plaintiff has grossly misinterpreted the Administrative Procedures Act as providing him with some "private remedy" as to BB&T and he has incorrectly perceived Defendants' failure to accommodate this private

remedy as a violation of a multitude of constitutional and statutorily protected rights.[7]

Plaintiff has not cited to any discrete, specific provision of law or legal authority

substantiating either of these fundamental precepts of all of his claims.  Because of all of

these failings, he has failed to state any claim upon which relief could be granted in his

complaint.  For all of these reasons, Defendants' motion to dismiss is due to be granted.

## IV.  CONCLUSION

For the reasons stated above, the Magistrate Judge RECOMMENDS  as follows:

a.      that Defendants' Motion to Dismiss (Doc. 2) be GRANTED and that this

case be DISMISSED, pursuant to Federal Rule of Civil Procedure Rule

12(b)(6), due to Plaintiff's failure to state any claim for which relief could

be granted;

---

[7]   Or, as Defendants put it in their Brief (Doc. 10) in support of their Motion to Dismiss the subsequent federal complaint filed by Plaintiff:

> Mr. Sealey does not appear to understand that BB&T was, in 2009, offering to *renew* his Colonial Bank loan, which had matured and was then due and payable in full.  Mr. Sealey declined to renew his Colonial Bank loan with BB&T, leaving it immediately due and payable.  Mr. Sealey appears to believe that BB&T was required to get his signature in order for BB&T to enforce its rights as successor in interest to the FDIC as Receiver for the failed Colonial Bank.   BB&T, as the holder of that debt, was under no such obligation.

> Mr. Sealey also appears to believe that BB&T's foreclosure was based on the renewal loan, *i.e.*, the documents he elected not to sign.  It was not; it was the pre-existing, Colonial Bank debt that was the basis of the subject foreclosure.  BB&T's succession to the rights of Mr. Sealey's loan and mortgage with Colonial Bank is supported by record evidence, as attached to and argued in the Brief in Support of Motion to Dismiss, doc. 3 in case no. 2:14-cv-1036-MHT-WC.

Defs.' Br. (Doc. 10) at 2, *Sealey v. Stidham, et al.*, Civ. Case No. 2"14-cv-1117-MHT-WC (filed Nov. 19, 2014) (citations omitted).

b.      that Plaintiff's "REQUEST AND MOTION FOR LEAVE TO AMEND COMPLAINT WITH ALTERNATIVE AND MORE DEFINITE STATEMENTS" (Doc. 21) be DENIED due to Plaintiff's failure to articulate any basis for granting leave to amend the complaint or otherwise provide a proposed amended complaint;

c.      that Plaintiff's "PETITION TO CONTINUE PROCEEDINGS AND COMPEL DEFENDANTS' TO PROVIDE FULL DISCLSOURE OF VERIFIED FACTS AND RESPOND TO PETITIONERS' CONFERENCE REQUESTING INFORMATION" (Doc. 22) be DENIED; and

d.      that Plaintiff's "MOTION OF EVIDENTIARY AND METHODS OF FRAUD PROCURER BY THE DEFENDANT IN VIOLATION OF DUE PROCESS" (Doc. 26) be DENIED.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **August 13, 2015**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the

District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 30th day of July, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE